# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:09cv415

| | |
|---|---|
| **DARRYL EL,** | )<br>) |
| **Plaintiff,** | )<br>) |
| Vs. | ) **MEMORANDUM OF DECISION**<br>) **and ORDER**<br>) |
| **MAX DAETWYLER CORP.;**<br>**DON BERGHOLZ; and**<br>**WALTER SIEGENTHALER,** | )<br>)<br>)<br>) |
| **Defendants.** | )<br>) |

**THIS MATTER** is before the court on defendants' Motion to Dismiss. Having considered defendants' motion, reviewed the pleadings, and conducted a hearing, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

**I.  Background**

In this action, plaintiff, proceeding *pro se*, contends that he was terminated from his employment in violation of Title VII based on his race, color, and religion. While plaintiff has checked a number of blocks on the standard Complaint form, the only specific factual allegation in the Complaint is that he was terminated based on his religion, Universalist, and perhaps, a misapprehension that he was Muslim. However, plaintiff admits that he was fired for sexually harassing a female coworker, which he denies occurred, and speculates that it was because of his religious beliefs that he was terminated. Despite having mentioned that he was a Universalist in the Complaint, plaintiff stated that he had no religion at the hearing. Defendants have moved to dismiss under Rule 12(b)(1), (5), and (6), Federal Rules of Civil Procedure.

**II.  Applicable Standards**

    **A.  Rule 12(b)(1) Standard**

Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject

matter of the lawsuit.  Lack of subject-matter jurisdiction may be raised at any time either by a litigant or the court.  Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884).  The ability of the court to independently address subject-matter jurisdiction is important to finality inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and raise the issue of subject-matter jurisdiction for the first time on appeal, thereby voiding the judgment.  Capron v. Van Noorden, 2 Cranch 126, 127, 2 L.Ed. 229 (1804).   The Federal Rules of Civil Procedure anticipate this issue and provide that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."  Fed.R.Civ.P. 12(h)(3).

When a court considers its subject-matter jurisdiction, the burden of proof is on the plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).  In Richmond, Fredricksburg & Potomac R.R. Co. V. United States, 945 F.2d 765 (4th Cir. 1991) (Ervin, C.J.), the Court of Appeals for the Fourth Circuit held, as follows

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Id.; Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir.1987). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Trentacosta, supra, 813 F.2d at 1559 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Trentacosta, supra, 813 F.2d at 1558. A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to de novo appellate review. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989); Shultz v. Dept. of the Army, 886 F.2d 1157, 1159 (9th Cir.1989).

Id., at 768-69.  Where jurisdictional facts are intertwined with facts central to the substance of a case, a court must find that jurisdiction exists and consider and resolve the jurisdictional objection as a direct attack on the merits of the case.  United States v. North Carolina, 180 F.3d 574, 580 (4th Cir. 1999).

**B.     Rule 12(b)(5) Standard**

Where a motion to dismiss is filed based on insufficient process or insufficient service of process, affidavits and other materials outside the pleadings may be properly submitted and considered.

> [T]he party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law.

Light v. Wolf, 816 F.2d 746, 751 (D.C.Cir.1987) (internal quotations omitted). Where the procedural requirements of sufficient process and service of process are not satisfied, a court lacks power to assert personal jurisdiction over a defendant. Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 514 (D.C.Cir.2002). Inasmuch as the sufficiency of process and service of process concern the court's jurisdiction, consideration of materials outside the pleadings, such as affidavits, is appropriate. Dimet Proprietary, Limited v. Industrial Metal Protectives, 109 F.Supp. 472 (D. Del. 1952).

**C.     Rule 12(b)(6) Standard**

Until recently, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that plaintiff could prove no set of facts which would support its claim and entitle it to relief. Neitzke v. Williams, 490 U.S. 319 (1989); Conley v. Gibson, 355 U.S. 41 (1957). This "no set of facts" standard has been specifically abrogated by the Supreme Court in recent decisions.

First, in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Court held that the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." Id., at 563. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id., at 561 (alteration in original).

Post Twombly, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts in their complaint that "raise a right to relief above the speculative level." Id., at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557. Instead, a plaintiff must now plead sufficient facts to state a claim for relief that is "*plausible* on its face." Id., at 570 (emphasis added).

While the Court was clear in Twombly that Conley was no longer controlling, see Twombly, 550 U.S. at 563, and Felman Production Inc. v. Bannai, 2007 WL 3244638, at *4 (S.D.W.Va. 2007), it again visited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (May 18, 2009). In Iqbal, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id., S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability . . . ." Id. While the court accepts plausible factual allegations made in a complaint as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual

allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Id., at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, the complaint must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. While a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002), "[f]actual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555.

### D. Impact of *Pro Se* Status

Although district courts must liberally construe *pro se* complaints, courts cannot act as the *pro se* plaintiff's advocate and cannot develop claims which the plaintiff failed to clearly raise on the face of his complaint. Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that district courts are not expected to assume the role of advocate for the pro se plaintiff). See also Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). As a result, even a *pro se* plaintiff's basis for relief "requires more than labels and conclusions...." Twombly, 550 U.S. at 555. Like plaintiffs who are represented by counsel, a *pro se* plaintiff must still "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). In light of Twombly and Bass, conclusory statements with insufficient factual allegations, even when asserted by *pro se* plaintiffs, will simply not suffice.

### III. Discussion

#### A. Failure to State a Claim

"Determining whether a complaint states a plausible claim for relief will ... be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1950 (2009). "While courts generally should hold

*pro se* pleadings 'to less stringent standards than formal pleadings drafted by lawyers,' they may nonetheless dismiss complaints that lack a cognizable legal theory or that fail to allege sufficient facts under a cognizable legal theory." Lewis v. Potter, 2009 WL 2168969 (D. Md. 2009).[1]

Plaintiff has checked a number of boxes on the Complaint form, including boxes indicating a belief that defendants discriminated against him with respect to his race, color, and religion, Complaint, Nature of the Case, ¶ 6; however, the only area of discrimination referred to in the "specific allegations" section of his Complaint is religion. Specifically, plaintiff alleges as follows:

- "Since 9-11-09 [sic], the day of the attack on the United States, I have been under attack by several co-workers" and "threatened";
- "I have been asked to state my religion" by three co-workers and a supervisor (none of whom terminated him);
- "I have been asked … to remove religious pictures" by three co-workers and a supervisor (none of whom terminated him and he did not allege when this occurred or if he complied.

Complaint, Ex B.[2] Plaintiff admits, however, that he was accused by a co-worker of sexual harassment, id., and that the reason he was given for his termination was the sexual harassment. Id. What is missing is an allegation that he was terminated because of his religion or that adverse employment actions were taken against him in close temporal proximity to the date he was terminated. Instead, plaintiff alleged that the sexual harassment charge was "an excuse to execute my termination of employment and my source of income." Id.

   1. **Religion as the Motivating Factor**

      a. **Membership in a Protected Class**

---

[1] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

[2] Plaintiff's Ex. B to his Complaint consists of one page of unnumbered paragraphs.

While plaintiff alleges that people at work mistook him for being of the Muslim faith, he has not alleged how his Universalist faith or a mis-perception that he was Muslim were motivating factors in his termination. Indeed, plaintiff does not even allege that any decision makers even knew of his faith or how it played a role in their termination decision. Further, plaintiff specifically stated at the hearing that he had no religion.

The court has closely read plaintiff's Complaint and listened very carefully to the arguments he made at the hearing. Construing matters in a light most favorable to him, he alleges that coworkers and perhaps a supervisor treated him differently because they perceived him as Muslim and because Muslims were treated with suspicion in the post 9/11 workplace. Thus, the court has determined that plaintiff is attempting to assert a claim of religious discrimination based on a perception that he is Muslim. While a *perception* that a person is suffering from a disability is actionable under the Americans with Disabilities Act, it does not appear that Title VII recognizes such a claim. As a colleague in this court, Honorable Martin Reidinger, United States District Judge, found in Lopez-Galvan v. Mens Wearhouse, 2008 WL 2705604 (W.D.N.C. Jul. 10, 2008):[3]

> As for the Plaintiff's claims based upon his "perceived race, Negroid," the Plaintiff has not cited to any authority that stands for the proposition that a Title VII claim based upon a person's "perceived race" is cognizable under the federal discrimination laws. At least two other district courts have rejected claims of "perceived race" discrimination under Title VII. *See Butler v. Potter*, 345 F.Supp. 2d 844, 850 (E.D.Tenn. 2004) (granting summary judgment on the grounds that plaintiff cannot state a claim for discrimination under Title VII due to his perceived race and/or national origin); *Uddin v. Universal Avionics Systems Corp.*, No. 1:05-CV-1115-TWT, 2006 WL 1835291, at *6 (N.D. Ga. June 30, 2006) (granting summary judgment as to Title VII claim based on perceived race or national origin discrimination). In both cases, the courts rejected claims based on perceived race or national origin on the grounds that Title VII does not contain an explicit provision for the protection of persons who are merely perceived to be part of a protected class, and that "Congress has shown, through the Rehabilitation Act and the American with Disabilities Act, that it knows how to enact legislation that protects persons who are wrongly perceived to be in a protected class." *Butler*, 345 F.Supp. 2d at 850. The Court finds the rationale of these cases persuasive, and therefore concludes that the Plaintiff's Title VII claims based upon his "perceived race" should be dismissed.

---

[3] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

Id., at *7. Consistent with such decision, and dealing with a nearly identical claim of being perceived as Muslim and mistreated based on such mis-perception by others in the workplace, the district court held in Lewis v. North Gen. Hosp., 502 F.Supp.2d 390 (S.D.N.Y 2007), as follows:

> [T]he "perceived religion" claim also fails as a matter of law, for the protections of Title VII do not extend to persons who are merely "perceived" to belong to a protected class. *See Uddin v. Universal Avionics Systs. Corp.*, No. 05 Civ. 1115(TWT), 2006 WL 1835291, at **5-6 (N.D.Ga. June 30, 2006) ("Title VII does not explicitly protect persons who are perceived to belong to a protected class.") (emphasis in original); *Butler v. Potter*, 345 F.Supp.2d 844, 850 (E.D.Tenn.2004) ("Title VII protects those persons that belong to a protected class, ... and says nothing about protection of persons who are perceived to belong to a protected class.") (emphasis in original; internal citation omitted); *see also Berrios v. Hampton Bays Union Free Sch. Dist.*, No. 02 Civ. 3124, 2007 WL 778165, at *1 (E.D.N.Y. Mar.12, 2007) (noting absence of Supreme Court or circuit court precedent for "perceived religion" claim under Title VII, but deciding to put such claim to jury to permit appellate review). In the Americans with Disabilities Act, Congress provided for claims based on a "perceived" disability or being "regarded as" having a disability. See Butler, 345 F.Supp.2d at 850. If Congress had wanted to permit a similar cause of action under Title VII for "perceived religion" discrimination, it could have so provided. It did not.

Id., at 401. Inasmuch as plaintiff stated that he has no religion, he has failed to state a cognizable claim for discrimination in violation of Title VII based on religion inasmuch as he cannot be a member of a protected class absent some membership in a protected class. To the extent plaintiff has stated in his Complaint that he is a member of the Universalist religion or church, he has also failed to state a claim as the only specific allegation he has made is that he was discriminated against based on a mis-perception that he was Muslim. Put another way, plaintiff has failed to allege how he was discriminated against based on being a Universalist.

\* \* \*

Inasmuch as plaintiff is proceeding *pro se*, the court notes that such determination does not mean that plaintiff was not subjected to harassment based on being perceived as Muslim or that persons of the Muslim faith do not receive the same protections under Title VII as members of other religions, as they do. It only means that Congress has not enacted laws that would make adverse employment actions based on someone being *perceived* as having a religious affiliation, be it Catholic, Muslim, or any other religion, actionable under Title VII.

### b. Plausible Allegations that Could Support a Presumption of Discrimination

Even if the court assumed plaintiff could allege membership in a protected class, the second inquiry is whether plaintiff has pled facts sufficient to raise a reasonable inference of discrimination. To do so, plaintiff must plead facts that, if later proved, would establish a *prima facie* case. To create a presumption of religious discrimination, plaintiff must allege that:

> (1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004), *cert. denied*, 543 U.S. 1132 (2005). Plaintiff has not alleged that he was performing his job at a level that met his employer's expectations or that he was replaced by someone outside the protected class. Specifically, plaintiff concedes that he was terminated for sexual harassment, which would clearly be performance outside the legitimate expectations of his employer.

Even if plaintiff had alleged facts establishing a *prima facie* case, he would then have to plead plausible facts that the given reason - - misconduct in the form of sexual harassment - - was pretext for unlawful discrimination. While plaintiff has plead that he did not sexually harass a co-worker, he has not alleged that his employer did not believe those allegations. The Fourth Circuit has consistently held that feelings or perceptions of discrimination by the employee are irrelevant:

> we have repeatedly explained that "'[i]t is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff." Accordingly, the plaintiff's "perception of [her]self . . . is not relevant." Similarly, that plaintiff's coworkers may have thought that [she] did a good job, or that [she] did not 'deserve' [to be discharged], is close to irrelevant."

DeJarnette v. Corning Incorporated, 133 F.3d 293 (4th Cir. 1998)(citations and quotations omitted). Speculation and conjecture that the decision makers in this case were motivated by his perceived religion are insufficient as they raise a mere possibility of discrimination rather than the plausibility which is necessary to support an inference of discrimination upon Rule 12(b)(6) review. Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241-42 (4th Cir. 1982).

## 2. Religious Harassment

Plaintiff's Complaint may also be viewed as attempting to allege a claim for religious harassment. The essential elements of a religious harassment claim are: (1) unwelcome harassment; (2) based on plaintiff's religion; (3) sufficiently severe or pervasive to alter the conditions of employment and to create an abusive atmosphere; and (4) some basis for imposing liability on the employer. Davis v. Dimensions Health Corp., 639 F.Supp.2d 610, 614 (D. Md. 2009). At most, plaintiff has alleged that coworkers questioned him about his religious affiliation in a post 9/11 work environment and that his employer directed him to remove his religious pictures from the walls of the workplace. Plaintiff does not allege whether he did in fact remove his religious pictures, and if not, whether there were any negative repercussions. Plaintiff has included a number of pictures as attachments to his Complaint, which the court notes are representative of many different religions.

Taking such factual allegations as true, such facts would not amount to conduct so pervasive or severe that would have "altered the conditions of employment and created an abusive atmosphere." Whatley v. S.C. Dept. of Public Safety, 2006 WL 3918239 (D.S.C. 2006) (sporadic warnings to stop expressing religious views in the workplace did not threaten or humiliate plaintiff, did not impact his work, and did not create a hostile work environment). Plaintiff has not alleged a claim for religious harassment.

## 3. Dismissal of the Named Individuals

The named individual defendants are plaintiff's former supervisors, who have moved to dismiss the Complaint against them. In Lissau v. Southern Food Service, Inc.,159 F.3d 177 (4th Cir. October 28, 1998), the Court of Appeals for the Fourth Circuit held that a supervisory employee is not an "employer" subject to Title VII liability. The court will dismiss the Title VII claims asserted against the individual defendants.

## B. Statute of Limitations

Defendants have also moved to dismiss any allegations of the Complaint that relate to events

that occurred prior to December 19, 2008, as such events would have occurred more than 180 days before plaintiff filed his charge of discrimination with the EEOC. Sharafeldin v. Md. Dept. of Public Safety & Correctional Services, 131 F.Supp.2d 730, 738 (D. Md. 2001). In the Complaint, plaintiff states that the discriminatory acts occurred "9-11-01 -> 3-20-09." Complaint, nature of the Case, ¶ 2. In response to the motion, plaintiff has provided no particulars as to when alleged wrongful acts occurred, other than the date of his termination. Thus, any alleged actions that took place before December 19, 2008, are barred, and such motion is granted.

    **C.    Improper Service of the Corporate Defendant**

In addition to failing to state a cognizable claim, defendants point out the plaintiff's service of the corporate defendant was defective. Plaintiff apparently attempted to serve the corporate defendant by mailing a copy of the Complaint and Summons to "Max Daetwyler."[4] Under Federal Rule of Civil Procedure 4(h), a plaintiff may serve a corporation either by complying with the applicable state law requirements for service of process or by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process … ." Fed.R.Civ.P. 4(h). North Carolina law, in turn, permits service "by mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to [an] officer, director or [managing] agent." N.C. Rule of Civ. P. 4(j)(6)(c). Clearly, plaintiff was mistaken in directing the summons to a deceased[5] person "Max Daetwyler" rather than an officer, director, or managing agent of "Max Daetwyler Corp."

The court will not, however, reach the issue as it is apparent that application of Rule 12(b)(6) requires dismissal. Further, the court would be hesitant to grant such a motion without reopening

---

[4] Review of the docket reveals that plaintiff caused to be issued the summons and that the United States Marshal delivered the summons through use of the United States mail, which is permitted under North carolina law as to corporations.

[5] Counsel for defendants informed the court at the hearing that the person after whom the corporation was named died decades ago.

the time for service, reissuing a proper summons, and allowing the proper service of the corporate defendant by the United States Marshal.[6]  Such motion will be denied without prejudice.

### D. English Language Requirement

Plaintiff appears to contend that his supervisor required him to "stop greeting in the Arabic language" and "to speak in the mother language only."  Complaint, Ex. B.  Even though he has not checked the "national origin" block on the Complaint form, plaintiff could be attempting to allege a Title VII violation based on national origin by contending that his employer required use of English only in the workplace.  The EEOC guidelines provide national origin discrimination "as including, but not limited to, the denial of equal employment opportunity ... because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. §1606.1 (emphasis added).  The EEOC Guidelines further recognize that an individual's "primary language ... is often an essential national origin characteristic," and therefore find "Speak-English-only" rules requiring employees to speak only English at all times in the workplace to constitute "a burdensome term and condition of employment."  29 C.F.R. §1606.7(a).  Neither of these regulations, however, is applicable in the instant case.  The plaintiff does not claim that he was subjected to harassment due to a mere "linguistic characteristic," such as an accent.  Carino v. Univ. of Okla. Bd. of Regents, 750 F.2d 815, 819 (10th Cir. 1984) (finding discrimination based on "[a] foreign accent that does not interfere with a plaintiff's ability to perform duties of the position he has been denied" to be unlawful under Title VII).  Further, "[t]here is nothing in Title VII which protects or provides that an employee has a right to speak his or her native tongue while on the job."  Long v. First Union Corp. of Va., 894 F.Supp. 933, 941 (E.D. Va. 1995), aff'd, 86 F.3d 1151 (4th Cir. 1996); Hanoon v. Fawn Eng'g Corp., 324 F.3d 1041, 1048 (8th Cir. 2003) ("criticizing a foreign employee's facility with the English language [does not] constitute[] discrimination against a particular race or national origin"); Velasquez v. Goldwater Mem'l Hosp., 88 F.Supp.2d 257, 262 (S.D.N.Y. 2000)

---

[6] At the hearing, the corporate defendant advised the court that it received actual notice of this action.

("Classification on the basis of language does not by itself 'identify members of a suspect class' and would not support an inference of intentional national origin discrimination."); Betances v. Prestige Decorating & Wallcovering, Inc., 2006 WL 963877, at *2 (S.D.N.Y. Apr. 13, 2006) ("non-English speakers ... are not a protected class under Title VII.").[7]

In this case, plaintiff's allegations appear to touch on his use of Arabic expressions in the work place, particularly greetings.[8] There is no contention that he communicated matters of substance in Arabic or that he was even a fluent Arabic speaker. Indeed, at the hearing plaintiff was fluent in English with no accent that would indicate that his national origin was anything other than the United States. Having considered the plaintiff's Complaint liberally, plaintiff has not stated a plausible Title VII action based on national origin.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendants' Motion to Dismiss (#8) is **GRANTED,** and this action is **DISMISSED.**

**Advice of Appellate Rights**

In accordance with Wilder v. Chairman of the Central Classification Bd., 926 F.2d 367, 371 (4th Cir.)("while not mandated, the preferable practice is to include a statement to all final orders involving *pro se* litigants setting forth the litigants' appellate rights"), cert. denied, 502 U.S. 832 (1991), plaintiff is hereby advised that he has the right to appeal this decision to the Court of Appeals of the Fourth Circuit in the manner described in Rule 3, Federal Rules of Appellate

---

[7] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

[8] Plaintiff explained such contention at the hearing, stating that he would greet others in the workplace with the Arabic greeting "*as salaamu alaikum*," meaning "may peace be with you."

Procedure, by filing a Notice of Appeal with the Clerk of this Court within the time prescribed in Rule 4, Federal Rules of Appellate Procedure, which is **30 days** from entry of this Order. Failure to file a Notice of Appeal within the first 30-day period after entry of judgment requires the filing of a motion for extension of time and a notice of appeal within the second 30-day period after entry of judgment. Fed. R. App. P. 4(a)(5). See <u>United States ex rel. Leonard v. O'Leary</u>, 788 F.2d 1238, 1240 (7th Cir. 1986).

Signed: May 9, 2011

Max O. Cogburn Jr.
United States District Judge